UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICARDO LOZADA, | ) | CASE NO. 1:10CV2608 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| v. | ) | GEORGE J. LIMBERT |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | **MEMORANDUM OPINION & ORDER** |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Ricardo Lozada ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the Court affirms the Commissioner's decision and dismisses Plaintiff's complaint in its entirety with prejudice:

## I.    PROCEDURAL AND FACTUAL HISTORY

On January 30, 2007, Plaintiff filed an application for DIB, alleging disability beginning November 3, 2003, with a date last insured of March 31, 2006, due to herniated discs, asthma, cervical and lumbar spine injuries, and depression. ECF Dkt. #10-2 at 9; ECF Dkt. #10-6 at 2; ECF Dkt.#10-7 at 1-9; ECF Dkt. #10-8 at 8. The SSA denied Plaintiff's applications initially and on reconsideration. ECF Dkt. #10-6 at 2-10. Plaintiff filed a request for an administrative hearing and on September 1, 2009, an ALJ conducted the hearing. *Id.* at 6-39. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Nancy Borgeson, a vocational expert ("VE"). ECF Dkt. #10-2 at 5.

On October 20, 2009, the ALJ issued a decision denying benefits. ECF Dkt. #10-3 at 5-15. Plaintiff filed a request for review of the decision, but the Appeals Council denied the request. ECF Dkt. #10-2 at 1-3.

On November 15, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.  On June 13, 2011, Plaintiff filed a brief on the merits.  ECF Dkt. #14.  On August 10, 2011, Defendant filed a brief on the merits.  ECF Dkt. #18.  On August 24, 2011, Plaintiff filed a reply brief.  ECF Dkt. #19.

## II.    SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In his decision, the ALJ determined that Plaintiff suffered from sprains and strains of the cervical and lumbar spine and an affective disorder, which qualified as severe impairments under 20 C.F.R.  §404.1521 *et seq*. and 20 C.F.R. § 416.921 *et seq*.  ECF Dkt. #10-3 at 7.   The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *Id*.  He discounted Plaintiff's allegations of pain and limitations and concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work involving lifting, carrying, pushing and pulling up to ten pounds frequently and twenty pounds occasionally, sitting up to six hours of an eight-hour workday, standing and walking a combined total of two hours of an eight-hour workday with normal breaks, occasional climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, occasional stooping and crouching, no crawling or kneeling, frequent balancing, fingering and feeling, and occasional handling bilaterally.  *Id*. at 9.  The ALJ further found that Plaintiff could not perform tasks with overhead reaching with his left upper extremity, and concluded that he must avoid extreme cold, high levels of vibration, unprotected heights and workplace hazards.  *Id*.  The ALJ also found that Plaintiff could not perform tasks that require him to be a passenger in a vehicle, but he could perform simple and complex tasks.  *Id*.  However, the ALJ limited Plaintiff to low stress tasks with no production quotas or piece work, no work involving arbitration, negotiation or confrontation, and no more than minimal interaction with the public.  *Id*.

Based upon this RFC and the testimony of the VE, the ALJ found that through his date last insured of March 31, 2006, Plaintiff could perform jobs existing in significant numbers in the national economy, including that of a general office clerk and order clerk in the food and beverage industry.  ECF Dtk. #10-3 at 14.

### III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011), quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted).  An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).  The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

## V.  ANALYSIS

The Court notes that Plaintiff does not assert that the ALJ committed error in determining that the medical evidence that he submitted for treatment rendered after his date last insured was irrelevant.  ECF Dkt. #10-3 at 12-13.  Rather, Plaintiff asserts a procedural due process error as to the Appeals Council's failure to consider evidence that he was allowed to submit to them and he asserts ALJ error in assessing his credibility.  ECF Dkt. #5-12.

### A.  PROCEDURAL DUE PROCESS

Plaintiff first asserts that he was denied his constitutional right to procedural due process by the Appeals Council when the Appeals Council failed to consider the new and material evidence that he submitted to them.  ECF Dkt. #14 at 5-8.  Plaintiff contends that on April 27, 2010, he submitted to the Appeals Council medical records and notes from his treating psychologist which cover the relevant time period of his disability period. *Id.* at 14.  Plaintiff attaches a copy of that evidence to his brief before this Court.  ECF Dkt. #14-2 at 3-39.  Plaintiff asserts that this Court must remand his case because the proceeding before the Appeals Council  is constitutionally protected, and the evidence that he submitted to the Appeals Council was new, material, and would have most likely caused the Appeals Council to remand his case because the evidence contradicted the ALJ's findings.  ECF Dkt. #14 at 2.  Interestingly, in his reply brief, Plaintiff contends that he need not

-4-

show that the evidence is new and material because the constitutional violation itself requires that the Court remand his case.  ECF Dkt. #19 at 1-2.

Defendant concedes that the documents that Plaintiff submitted to the Appeals Council are not contained in the record and the notice by the Appeals Council denying review makes no mention of this submission or Appeals Council's review of the documents.  ECF Dkt. #10-2 at 2-4; ECF Dkt. #18 at 8, fn 2.  Defendant believes that a clerical error occurred which caused the Appeals Council not to consider these documents.  *Id.*

Despite the Appeals Council's omission, the Court is not persuaded by Plaintiff's assertion that this Court must remand the case for this reason alone.  In *Cline v. Commissioner of Social Security,* the Sixth Circuit Court of Appeals held that "where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." 96 F.3d 146, 148 (6th Cir. 1996), citing *Cotton v. Sullivan*, 2 F.3d 692, 695-696 (6th Cir. 1993).  In *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 685 (6th Cir. 1992), the Sixth Circuit applied this same holding where the claimant submitted evidence to the Appeals Council that was not presented to the ALJ and the Appeals Council never considered the evidence.  The Sixth Circuit held that:

> The court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where the party seeking remand shows that the new evidence is material. *Willis v. Secretary of Health & Human Servs*., 727 F.2d 551, 553-54 (6th Cir.1984).

*Id.*  Thus, this Court's review is limited to considering final decisions of the Commissioner, and when the Appeals Council declines to review the ALJ's decision and render a new decision, such as here, the ALJ's decision becomes the Commissioner's final decision subject to judicial review. *See Prescott v. Astrue*, 5:08CV101-J, 2009 WL 539900, at *4 (W.D. Ky., Mar. 4, 2009), unpublished, citing *Cotton*, 2 F.3d 692.  Plaintiff's remedy before this Court is to seek remand pursuant to sentence six of section 405(g).

Sentence 6 states of section 405(g) of Title 42 of the United States Code states:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  Plaintiff has attached to his brief before this Court a copy of his brief to the Appeals Council and the medical records that he sought to submit to the Appeals Council.  ECF Dkt. #14-1; ECF Dkt. #14-2. The medical records are treatment notes of Dr. Paul Monkowski, Plaintiff's treating psychologist, from January 7, 2004 through November 19, 2009.  ECF Dkt. #14-2.

Before a Court will remand a social security claim for consideration of additional evidence, the claimant must prove that new evidence exists which would be material to the determination of his disability claim and that good cause exists as to why he failed to incorporate this evidence into the prior administrative proceedings.  *Foster*, 279 F.3d at 357, citing *Cline*, 96 F.3d at 148.  The Court does not consider evidence to be "new" solely because it was not prepared until after the hearing before the ALJ.  *Foster*, 279 F.3d at 257.  Evidence is considered new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Id*., quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).  Further, the claimant must show that the new evidence is also "material," which means that the claimant must show that there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs*., 865 F.2d 709, 711 (6th Cir.1988).  Moreover, in order for a claimant to show good cause for failing to incorporate the new and material evidence in a prior proceeding, he must demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357, citing *Willis v. Sec'y of Health & Human Servs*., 727 F.2d 551, 554 (1984) (per curiam).

The Court finds that Plaintiff has failed to provide good cause for not submitting Dr. Monkowski's records sooner and he has failed to show that this evidence is new evidence.  Plaintiff

fails to explain why he did not submit this evidence earlier since other evidence submitted showed his treatment with Dr. Monkowski and Plaintiff testified regarding his ongoing treatment with him. Thus, it was known that Plaintiff was treating with Dr. Monkowski during the relevant time period. In addition, Plaintiff fails to show that these records were not in existence or available to him prior to the time of the ALJ's hearing.  The ALJ held his hearing on September 1, 2009.  ECF Dkt. #10-3 at 1.  Every page but one of Dr. Monkowski's 37 pages of notes are dated prior to the ALJ's hearing date.  *See* ECF Dkt. #14-2 at 3-38.

Moreover, even if these records were considered new and Plaintiff had shown good cause for failing to submit them sooner, the Court finds that they are not material as they would not have led the Appeals Council to remand the case or the ALJ to find disability.  A review of the treatment notes shows consistency with the ALJ's limitations and findings.  In his decision, the ALJ stated that Plaintiff's date last insured was March 31, 2006 and while significant medical evidence existed in the record extending beyond the date last insured, he did not consider that evidence because he did not deem it relevant to Plaintiff's ability to perform basic work activities during the time period relevant for disability purposes.  ECF Dkt. #10-3 at 12.  The ALJ also stated that "[a]lthough the claimant later sought mental health treatment, there is no indication that he did so prior to his date last insured."  *Id*.  The ALJ found that prior to March 31, 2006, Plaintiff's date last insured, "the claimant was observed to generally be doing well, with mild to moderate limitations in mental functioning."  *Id*. at 12-13.  The ALJ reviewed the opinions of Dr. Meyers, who had opined on August 31, 2005 that Plaintiff had major depressive disorder and an anxiety disorder and was totally disabled from functioning as a police officer or any other occupation for which he had been trained. *Id*. at 12, citing ECF Dkt. #10-33 at 14-15.  The ALJ also reviewed the opinion of Dr. Smith, a psychiatrist, who evaluated Plaintiff at the request of the Ohio Police & Fire Pension Fund and diagnosed him with recurrent, moderate major depressive disorder, chronic post-traumatic stress disorder, and panic disorder with agoraphobia.  ECF Dkt. #10-3 at 12, citing ECF Dkt. #10-28 at 13-26 and ECF Dkt. #10-29 at 1-3.  Nevertheless, as the ALJ pointed out, Dr. Smith found that Plaintiff had only mild impairment in his daily living activities due to his mental impairments, mild to low abilities to concentrate and tolerate stress, and moderate limitations in social functioning.  *Id*.

-7-

Dr. Monkowski's treatment notes are mainly consistent with the ALJ's conclusion that Plaintiff was observed to be doing generally well prior to his date last insured with only mild to moderate limitations. Dr. Monkowski noted some stress escalation due to Plaintiff's divorce and custody battle and some other family issues, but he noted decreased anxiety and depression once the court proceedings were ending. ECF Dkt. #14-2 at 27. Dr. Monkowski also noted some difficulties with Plaintiff accepting that he had to retire from the police force, but found Plaintiff "focused and realistic in matters of his family life and work injury," showing "exceptional ego strength," "handling stress & maintaining well," and found his attitude "positive," "appropriate" and "adequately managed." *Id.* at 4, 6, 7, 10-15, 19, 26-31, 34. Further, Dr. Monkowski offered no functional limitations in these notes and the notes were consistent with Dr. Monkowski's February 2009 letter in which he offered no opinion on Plaintiff's limitations but indicated that Plaintiff's physical impairments had "taken their toll on his psychological well-being." *Id.*

Since Plaintiff has failed to show good cause for submitting Dr. Monkowski's notes at such a late date, and otherwise failed to show that these records are new and material, the Court finds no merit to Plaintiff's first assertion of error.

## B.  CREDIBILITY ASSESSMENT

Plaintiff also asserts that the ALJ erred in determining his credibility because he failed to comply with Social Security Rule 96-7p ("SSR 96-7p"), 20 C.F.R. §§ 404.1529(c) and 416.929(c). ECF Dkt. #14 at 8-12. He contends that the ALJ erroneously found that he could stand and walk up to two hours per workday based upon the fact that Plaintiff could perform household tasks. *Id.* at 9. He asserts that the ALJ failed to consider the location, frequency, duration and intensity of his pain, failed to consider the effectiveness and side effects of his medications, failed to consider treatment other than medication that Plaintiff had received, and erred in failing to find that his pain alone was disabling. *Id.* at 9-12.

An ALJ may discount a claimant's credibility where the ALJ finds contradictions among the medical records, claimant's testimony, and other evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997). The court cannot substitute its own credibility determination for that of the ALJ. *Kuhn v. Comm'r,* 124 Fed. App'x 943, 945 (6th Cir. 2005). Claimants who challenge

-8-

the ALJ's credibility determination "face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir.2005). The court must give the ALJ's credibility determinations great weight because "the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir.1993). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir.2007).

Pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). When disabling pain is alleged, the social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. §§ 404.1529, 416.929. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Sec'y of Health and Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* The ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. While he must consider the factors in Social Security Ruling 96-7p, an ALJ need not analyze all of the factors in his decision. *See Boutros v. Astrue*, No. 1:09CV2574, 2010 WL 3420296, at *4 (Aug. 9, 2010). He must, however, show that he considered the relevant evidence and he must provide clear reasons for his credibility findings. *Id.,* citing SSR 96-7p, Purpose section and citing and quoting *Felisky*, 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so.").

Contrary to Plaintiff's assertion, the ALJ in the instant case did consider the factors of SSR 96-7p and the relevant regulations in evaluating his credibility. ECF Dkt. #10-3 at 9-13. He cited the relevant Ruling and regulations in his decision and reviewed Plaintiff's work history, his testimony regarding his pain, side effects from his medications, his daily living activities, third-party statements from Plaintiff's relative and friends, the findings and conclusions of the treating, examining and reviewing physicians, and the other medical evidence of record. *Id.* The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms that he described. *Id.* However, he found that Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not credible beyond the RFC that the ALJ determined. *Id.* The Court finds that the ALJ provided clear reasons for his credibility determination and substantial evidence supports that determination.

The ALJ noted Plaintiff's long and continuous work history up until 2002 when he was involved in a motor vehicle accident while on the job as a police officer which caused bulging discs

and disc protrusions in his neck and back. ECF Dkt. #10-3 at 10. The ALJ indicated that Plaintiff successfully returned to work in March 2003 until he exacerbated these injuries and also suffered human bites to his finger in November 2003 after chasing down a suspect and falling to the ground with him. *Id*. at 13. The ALJ noted that November 3, 2003 was Plaintiff's last day of work as he was placed on the "sick list" and then had to retire on December 29, 2006. *Id*.

The ALJ also cited the various medical examination and test results in 2003 and 2004 showing that Plaintiff suffered multiple small disc herniations at C4-5, C5-6, L4-5 and L5-S1 and his treating physician diagnosed cervicothoracic strain and lumbosacral strain by Plaintiff's treating physician. ECF Dkt. #10-3 at 11. The ALJ went on to review medical tests in 2005 showing a foraminal extrusion at L4-5 compressing on the right L4 nerve, a minimal bulge at L3-4, a herniation at L5-S1 impinging on the right S1 nerve root with protrusion at L4-5 and desiccation at L3-4. ECF Dkt. #10-3 at 10.

The ALJ further reviewed Plaintiff's testimony regarding his pain and his complaints to his doctors regarding his pain. ECF Dkt. #10-3 at 9-12. Despite Plaintiff's assertion to the contrary, the ALJ did consider Plaintiff's testimony regarding the location, duration, frequency and intensity of his pain, stating in his decision that:

> The claimant has alleged that he is unable to sustain basic work activities on a regular and continuing basis due to the combined affects[sic] of pack[sic] pain and a limitation on function in his hand. The claimant testified that the impairments were incurred while working as a police officer for the City of Cleveland. The claimant described his pain as staring[sic] in his head, and radiating down his shoulder, neck and arm. The pain in his back radiates down his right leg to his foot.

*Id*. at 9. In addition, the ALJ noted Plaintiff's complaints of pain to medical providers. *Id*. at 10-12. The ALJ also "significantly" limited Plaintiff's ability to stand and walk "due to back pain radiating down his leg," thereby crediting Plaintiff's testimony regarding the location of his pain.

*Id*. at 13. He further limited Plaintiff to work that did not involve overhead reaching with the left upper extremity, consistent with Plaintiff's testimony that he had trouble lifting his left arm. ECF Dkt. #10-2 at 16. He also credited Plaintiff's statement that he did not like driving as a passenger by limiting him to work that did not involve him being a passenger in a car. ECF Dkt. #10-2 at 24 and ECF Dkt. #10-3 at 9.

-11-

Moreover, and also contrary to Plaintiff's assertion, the ALJ did consider the side effects that Plaintiff reported experiencing from his medications.  While he did not specifically cite the side effects, the ALJ stated that Plaintiff's testimony regarding the side effects of his medication was "well supported in the medical evidence of record."  ECF Dkt. #10-3 at 13.  He noted that Plaintiff requested renewal of his Vicodin prescription in January 2006.  *Id*. at 12.  Taking the side effects of his medications into consideration, the ALJ reasonably accommodated Plaintiff's reports of medication side effects by restricting him to a limited range of sedentary work with the avoidance of unprotected heights, high levels of vibration, and workplace hazards, and he also limited Plaintiff to low stress tasks, no production quotas or piece work, and no climbing of ladders, ropes or scaffolds.  *Id*. at 9, 13.  Thus, the ALJ found Plaintiff's testimony regarding the side effects supported by the record and he accommodated them accordingly.  Moreover, no doctor had restricted Plaintiff's ability to work based upon side effects from his medications.

Plaintiff is correct that the ALJ did not note his use of epidural blocks and cortisone shots to alleviate his pain.  ECF Dkt. #14 at 11-12.  However, the ALJ did refer to Plaintiff's participation in physical therapy in 2002, 2003, and 2004 and noted his use of medications that sometimes caused adverse side effects.  *Id*. at 11-13.  The ALJ noted that Plaintiff participated in physical therapy in 2004, but still reported having difficulty sleeping, sitting, driving and walking.  *Id*. The ALJ also cited to the report of Dr. Shamir, which noted Plaintiff's use of epidural blocks and cortisone shots. *Id*. at 11-12, citing ECF Dkt. #10-27 at 6.  The ALJ also noted that Plaintiff had failed conservative treatment on November 28, 2005.  ECF Dkt. #10-3 at 12.

As to reviewing Plaintiff's daily activities, the Court agrees with Plaintiff that the ALJ should not have relied upon the facts that Plaintiff ran on a treadmill and stair climber for short periods of time and could perform some household tasks in order to find that he could walk and stand up to two hours per workday.  ECF Dkt. #10-3 at 13.  The ALJ had referenced a December 17, 2002 note where Plaintiff's physical therapist reported that he could use a versa climber and treadmill.  *Id.* at 10.  This date precedes both Plaintiff's onset date and his date last insured. Moreover, Plaintiff reported that he could perform some household chores, such as cooking and laundry, but he indicated that he has to break up the time periods in order to complete these types

of chores.  ECF Dkt. #10-2 at 19.  In addition, the ALJ cited to a note by Plaintiff's treating physician Dr. Vangelos on January 23, 2004 that Plaintiff had been doing well until he irritated his back in "another fight." ECF Dkt. #10-3 at 11, citing ECF Dkt. #10-30 at 24.  While the ALJ inferred that Dr. Vangelos was talking about a boxing match in which Plaintiff participated since Plaintiff is a former boxer, the Court is not so quick to make such an inference since this progress note follows the November 2003 fight with a suspect that Plaintiff had encountered while on the job.

The ALJ also cited to third-party statements made by Plaintiff's sister and friends, who reported Plaintiff's struggles to complete daily living activities when once he prided himself on being fit and able to perform the job that he loved as a police officer and to increase his skill as a boxer.  ECF Dkt. #10-3 at 13.  The ALJ found that "[w]hile I do not doubt that these individuals have watched their friend and brother change since 2003, I find that these opinions are not consistent with the claimant's own description of his activities prior to his date last insured." *Id.*  The ALJ failed to elaborate on this point.

These findings alone as to Plaintiff's daily living activities would not support the ALJ's credibility finding.  However, the ALJ also thoroughly reviewed the medical evidence of record and gave great weight in particular to the findings of Dr. Shamir.  ECF Dkt. #10-3 at 11, 13.  Dr. Shamir had conducted a clinical examination for the Ohio Police and Fire Pension Fund on November 11, 2005 and found that despite his cervical and lumbar herniated discs, degenerative changes in his lumbar spine, left hand and wrist sprain, left knee injury and cervical, thoracic and lumbar sprains and strains, Plaintiff could still perform sedentary work in that he could sit five to eight hours per workday, stand/walk from zero to three hours per workday, lift and carry up to ten pounds for zero to three hours per workday, climb stairs, crouch, stoop, bend and kneel occasionally, never climb ladders, and had no restrictions on overhead reaching.  ECF Dkt. #10-3 at 12, citing ECF Dkt. #10-27 at 13.  The ALJ also noted Dr. Shamir's clinical findings that Plaintiff had full muscle strength and sensation in his lower extremities, a normal gait, and he could perform toe and heel walking. *Id.*  The ALJ indicated that Dr. Shamir saw no signs of atrophy upon examination of Plaintiff. *Id.*  Dr. Shamir had concluded that while his injuries precluded Plaintiff from returning to work as a police officer, Plaintiff could still perform sedentary work with some limitations.  ECF Dkt. #10-27

at 13.

This medical evidence, coupled with the ALJ's explanation of his findings as to the other factors under SSR 96-7p, constitutes substantial evidence to support the ALJ's credibility findings. No doctor of record opined to the contrary or set more restrictive limitations for Plaintiff and the ALJ adequately explained his reasons for discounting Plaintiff's credibility.  In fact, a state agency medical consultant opined that despite his impairments, Plaintiff could perform a full range of medium exertional work.  The ALJ gave no credit to this opinion, finding that while Plaintiff was not totally disabled by his pain, he could not perform this higher level of work found by the state agency consultant.  ECF Dkt. #10-3 at 13.

For these reasons, the Court finds that substantial evidence supports the ALJ's credibility determination and his ability to perform sedentary tasks.

**VI.**     **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.


DATE: March 14, 2012                                */s/George J. Limbert*
                                                    GEORGE J. LIMBERT
                                                    UNITED STATES MAGISTRATE JUDGE

-14-